UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-                        1:05-CR-366
                                            (LEK)

JEFFREY TURNER,

               Defendant.

---

### MEMORANDUM-DECISION AND ORDER

On August 4, 2005, defendant Jeffrey Turner ("Defendant" or "Turner") was indicted for knowingly possessing a firearm after being convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Indictment (Dkt. No. 12). On October 13, 2005, a superseding indictment was filed against Turner which added a second count for knowingly possessing ammunition after being convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Superseding Indictment (Dkt. No. 17). Defendant filed an omnibus motion on April 6, 2006, which sought among other relief: (1) suppression of all evidence seized as a result of the search of Defendant's residence and all derivative evidence seized pursuant to that evidence; and (2) suppression of all pre-trial identification evidence. Omnibus Motion (Dkt. No. 23). By order dated June 28, 2006, this Court ordered that an evidentiary hearing be held concerning these suppression issues. MDO (Dkt. No. 29). The evidentiary hearing was held on August 3, 2006 and August 16, 2006. Minute Entries (Dkt. Nos. 30, 31). For the following reasons, Defendant's motion is denied.

### I.      BACKGROUND

The Indictment against Defendant arises from events taking place on the morning of November 3, 2004. The Government called four witnesses to testify as to the events of that

morning.  They were: (1) Albany Police Department Detective Michael Romano ("Detective Romano"); (2) Albany Police Department Patrol Officer Willie Flack ("Officer Flack"); (3) Kejay Garland ("Garland"); and (4) Albany Police Department Patrol Officer Michael Seney ("Officer Seney").  Defendant did not call any witnesses during the evidentiary hearing.  For purposes of this hearing, the Court finds that the testimony of the four witnesses was fully credible and adopts the following findings of fact.

According to the hearing testimony, officers of the Albany Police Department responded to 722 Central Avenue, Albany, New York, after receiving a report that an individual had been threatened with a handgun.  Transcript of Evidentiary Hearing held on August 3, 2006 ("Tr.") at 8, 64, 92; Transcript of the Evidentiary Hearing held on August 16, 2006 ("Tr. II") at 8.  Garland stated to police that he had gone to Defendant's apartment looking for Garland's girlfriend, Jacquelyn Evenhouse ("Evenhouse"), after seeing her car parked outside.  Tr. at 124, 136; Tr. II at 9.  After determining that Evenhouse was in Defendant's apartment and engaging in an argument with her in the doorway of the apartment, Garland reported that Defendant brandished a handgun.  Tr. at 127, 136; Tr. II at 9.  Garland continued his argument with Evenhouse in his vehicle until Defendant again brandished a handgun.  Tr. at 132, 158-59.  Garland then moved his vehicle to the parking lot of an adjacent bakery and police began to arrive on the scene.  Tr. at 134-35; Tr. II at 8.

After officers arrived, a perimeter was established.  Defendant emerged from his apartment holding a cell phone and stated that he was unable to comply with the officers' requests to get on the ground because of an injury to his leg.  Tr. at 11, 69; Tr. II at 19.  Officer Flack performed a pat down search of Defendant's body for weapons and after finding none, assisted Defendant towards patrol vehicles located on Central Avenue.  Tr. at 13, 70.  At this

time, Officers Romano, Flack, Reith and Sergeant Nadoraski secured their weapons and began to speak to Defendant.  Id. at 15, 58-59, 73.  Defendant was not placed in the patrol car nor handcuffed at this time.  Id. at 50-53.  The officers requested Defendant's permission to search his apartment and Defendant agreed so long as he could accompany the officers into the apartment.  Id. at 16-17, 75.  A written Consent To Search form was produced, explained to Turner, and then signed by him.  Id. at 16-17, 76-77; Gov't Ex. 1.

While Defendant sat at his kitchen table, Officers Romano, Flack, Reith, and Sergeant Nadoraski searched Defendant's apartment.  The search of Defendant's apartment resulted in the police recovering, among other things, a box of Mag Tech .380 ammunition and one magazine loaded with ammunition.  Tr. at 26-28, 79; Gov't Ex. 2, 3, 4.  The police then interviewed Michael Estes ("Estes"), the resident of the second floor apartment above Defendant.  Tr. II at 21. Estes stated that Defendant, who he knew as "Ha," had earlier on November 3, 2004, given him a black handgun to hide in a safe in Estes' apartment.  Id. at 23.  Estes gave the police permission to search his apartment, which resulted in the location of a .380 caliber handgun in Estes' safe. Id. at 23-25; Gov't Ex. 5.  Estes identified the handgun as the one previously given to him by Defendant.  Id. at 24.

Garland testified that while being accompanied by an unidentified officer, he witnessed Defendant coming out of the apartment from the parking lot of the adjacent bakery.  Tr. at 138-39.  Garland identified Defendant as the individual who threatened him with a handgun.  Id. at 138-40; Identification Report (Dkt. No. 28) at Ex. C.  This identification was transmitted to the officers by radio.  Tr. at 74; Tr. II at 16.

## II.      DISCUSSION

### A.      Suppression of Evidence Seized from Defendant's Residence

Defendant seeks an order suppressing all evidence seized in the November 3, 2004 search of his apartment.  Omnibus Motion (Dkt. No. 23) at 6.

In its Response, the Government asserts that the November 3, 2004 search of Defendant's apartment was conducted pursuant to a signed consent to search given by Defendant.  Gov't Response (Dkt. No. 28) at 8; Ex. D.  No warrant was obtained by the Albany Police Department prior to the search.  Id. at 14.  In a signed affidavit dated April 5, 2006, Defendant directly contradicts the Government's assertion and states that he did not consent to the Albany Police Department search of his apartment and did not sign any paperwork until after he was under arrest and the search was complete.  Turner Aff. (Dkt. No. 23) at 8.

A warrantless search of a home does not violate the Fourth Amendment as long as the authorities have the voluntary consent of an authorized individual.  United States v. Elliott, 50 F.3d 180, 185 (2d Cir. 1995) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)).  The Government is required to prove, by a preponderance of the evidence, that the consent was voluntary.  United States v. Isiofia, 370 F.3d 226, 231 (2d Cir. 2004) (citing United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983)); United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir. 1981).  To determine voluntariness, courts in this circuit consider the totality of the circumstances, Schneckloth, 412 U.S. at 227, and examine whether there is a reasonable basis to believe that an individual has consented to a search.  Isiofia, 370 F.3d at 231 (citing Schneckloth, 412 U.S. at 227, and United States v. Garcia, 56 F.3d 418, 423 (2d Cir. 1995)).

The Court fully credits the Government's witnesses and finds that the Government has sustained its burden to demonstrate that Defendant's consent to the search was voluntarily made.

The Government's witnesses testified that before the officers commenced their search of Defendant's apartment, Turner orally agreed to the search of his apartment as long as he was present and signed a written Consent To Search Form, which explicitly indicated that his apartment was to be searched, informed him of his constitutional right not to have his residence searched without a search warrant, and stated that such permission was given voluntarily and without threats or promises of any kind.  Gov't Ex. 1.

Defendant was neither coerced nor threatened to induce his consent.  The officers did not display weapons or physically abuse Defendant.  Turner was neither handcuffed nor under arrest. Based on the totality of the circumstances, the Court finds that Defendant voluntarily consented to the search of his apartment, and therefore, the November 4, 2005 search of Defendant's apartment was constitutional.  As a result, the Court denies Defendant's motion with regards to suppression of evidence resulting from the search of Defendant's residence and all derivative evidence seized pursuant to that evidence.

**B.   Suppression of Pre-Trial Identification Evidence**

Defendant moves to preclude the Government from use of any identification testimony by Garland due to taint in pre-trial identification procedure.  Omnibus Motion (Dkt. No. 23) at 7. Defendant asserts that Garland's identification of Defendant was a result of a police show-up that took place well over an hour after the alleged incident, and at a time when Defendant was in the custody of uniformed police officers.  Id.  Defendant contends that the police show-up was therefore impermissibly suggestive and should be suppressed.  Id.

A criminal defendant has a due process right "not to be the object of suggestive police identification procedures that create a 'substantial likelihood of irreparable misidentification.'" Solomon v. Smith, 645 F.2d 1179, 1185 (2d Cir. 1981) (quoting Neil v. Biggers, 409 U.S. 188,

198 (1972)).  In determining the admissibility of a particular identification, the Court must

consider whether (1) the procedure used was impermissibly suggestive and, if so, (2) whether the

identification remains reliable based on the totality of the circumstances.  United States v. Thai,

29 F.3d 785, 808 (2d Cir. 1994); United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir.

1990); Solomon, 645 F.2d at 1185.  Reliability of the identification is analyzed by considering

the factors outlined in Neil, 409 U.S. at 199-200.  These factors are:

> (1) the witness's opportunity to observe the criminal at the time of the crime, (2)
> the degree of the witness's attention at the time, (3) the accuracy of the witness's
> initial description of the criminal, (4) the certainty with which the witness first
> identified the suspect, and (5) the time lapse between the crime and the
> identification.

Solomon, 645 F.2d at 1186.  The five factors must be assessed under the totality of the

circumstances.  United States v. Tortora, 30 F.3d 334, 338 (2d Cir. 1994).  The Supreme Court

has noted that the "practice of showing suspects singly to persons for the purpose of

identification, and not as part of a lineup, has been widely condemned."  Stovall v. Denno, 388

U.S. 293, 302 (1967).

The Court has examined the record and finds that Garland's pre-trial identification of

Defendant was not impermissibly suggestive.  Defendant was not shown in a lineup with other

people.  Tr. at 138-39.  He was being escorted to police vehicle and was handcuffed at the time

Garland identified Defendant as being the person who had threatened him with a handgun.  Id. at

138-39, 168-70.  But, "[s]howups are permissible when they are conducted at or near the scene of

a crime soon after the commission of the crime."  Boles v. Senkowski, 878 F. Supp. 415, 421

(N.D.N.Y. 1995) (Koeltl, D.J.).  Here, the showup constituted a desirable, prompt on-the-scene

confrontation to insure that Defendant was the same person who had threatened Garland.  United

States v. Bautista, 23 F.3d 726, 729-30 (2d Cir. 1994); United States v. Butler, 970 F.2d 1017,

6

1021 (2d Cir. 1992); <u>United States ex rel. Cummings v. Zelker</u>, 455 F.2d 714, 716 (2d Cir.

1972); <u>United States v. Gonzalez</u>, 864 F. Supp. 375, 386 (S.D.N.Y. 1994); <u>Colson v. Mitchell</u>,

798 F. Supp. 966, 974 (E.D.N.Y. 1992); <u>United States v. Viscioso</u>, 711 F. Supp. 740, 748

(S.D.N.Y. 1989).

Furthermore, the procedures relied on were not conducive to misidentification and the

identification is otherwise reliable.  At the evidentiary hearing, Garland testified that he had the

opportunity to observe Defendant at close range when Defendant initially answered the door,

when Defendant brandished the handgun while Garland was standing at the front door, and when

Defendant brandished the handgun minutes later when Garland was sitting in his vehicle.  Tr. at

124, 132, 147-49, 158-59; <u>United States v. Leonardi</u>, 623 F.2d 746, 756 (2d Cir. 1980) (witness's

identification after observing suspect for twenty to twenty-five seconds adequate).  Garland was

able to provide the officers at the scene with a description of Defendant and identify that

Defendant had an injury which affected his ability to walk.  Tr. 138-41.  The length of time

between the crime and the show-up was approximately thirty minutes to forty-five minutes.  Tr.

at 138; <u>Leonardi</u>, 623 F.2d at 756; <u>United States v. Sanchez</u>, 603 F.2d 381, 386 (2d Cir. 1979).

Garland testified that he was certain at the time he observed Defendant outside the residence on

November 3, 2004 that Defendant was indeed the person that threatened him with a handgun.  Tr.

at 169-70.  In fact, almost two years after the incident, Garland testified that he could still

definitively recognize and identify Defendant as the person who pulled the gun on him.  <u>Id.</u> at

171-72.

Under these circumstances, the Court finds that the show-up was not impermissibly

suggestive and did not create a substantial likelihood of irreparable misidentification under the

test of <u>Neil v. Biggers</u>, 409 U.S. 188 (1972).  Garland's pre-trial identification of Defendant is

therefore admissible at trial.

7

### III.     CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendant's Omnibus Motion (Dkt. No. 23) seeking suppression of all

evidence seized as a result of the search of Defendant's residence and suppression of all pre-trial

identification evidence is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve copies of this Order.

**IT IS SO ORDERED**.

DATED:          October 04, 2006
                Albany, New York

Lawrence E. Kahn
U.S. District Judge